IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT EARL BARNES,            *

Plaintiff                      *

v                              *        Civil Action No. PWG-20-100

LT. ROBERT ANDERSON,           *
C.O. II. PHILLIP MERRILL,
C.O. II DEREK HARTLOVE,        *
LT. MICHELLE EL-BEY,
                               *
Defendants
                             ***

# MEMORANDUM OPINION

In his complaint filed pursuant to 42 U.S.C. § 1983, self-represented plaintiff Robert Earl Barnes[1] alleges that Defendants violated his rights under the Eighth and Fourteenth Amendments. Defendants Lt. Robert Anderson, Correctional Officer Phillip Merrill, Correctional Officer Derek Hartlove, and Lieutenant Michelle El-Bey,[2] through their counsel, have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 19. Mr. Barnes has filed an opposition to the Motion and Defendants filed a Reply to it, ECF Nos. 41, 42.

The case is ripe for review.[3] I find a hearing is unnecessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Defendants' Motion, treated as a Motion for Summary

---

[1] Mr. Barnes is presently incarcerated at Maryland Correctional Institution, Jessup, MD.

[2] At the time the events at issue occurred, Michelle El-Bey held the rank of sergeant.

[3] The filings in this case demonstrate that the events that underlie this case stemmed from observations made by correctional officials of the plaintiff, who was acting in manner that they thought required a mental health evaluation. The medical records that have been attached show that the Plaintiff has a history of paranoid schizophrenia. However, in reading the Plaintiff's filings and the attachments regarding his request for administrative relief from his place of confinement, his filings are coherent, logical, and reflect no inability to set forth his claims. Accordingly, I have determined that there is no need to appoint a guardian or otherwise take action to protect his interests in this litigation because there is no basis to question whether he is competent. Fed. R. Civ. P. 17(c)(2).

Judgment[4] under Rule 56 of Federal Rules of Civil Procedure, will be GRANTED.

## BACKGROUND

The gravamen of Mr. Barnes's Complaint is that he was put on suicide watch and when he filed an administrative remedy procedure ("ARP") request asking why, he received no response. He alleges Defendants violated his rights under the Eighth and Fourteenth Amendments. ECF No. 1 at 2-3; ECF No. 1-2.

On January 14, 2020, Plaintiff filed this Complaint and a copy of his October 26, 2019 ARP No. CMCF 0386-19. ECF No. 1, ECF No. 1-2. In that ARP, Mr. Barnes alleged that on October 6, 2019, at approximately 8:00 p.m. he had a "medical condition in which [he] blacked out and fainted." ECF No. 1-2 at 2. Mr. Barnes, who was at that time an inmate at the Central Maryland Correctional Facility ("CMCF"), was taken to the medical unit where he remained until the morning of October 7, 2019. *Id.* Lt. Anderson informed Mr. Barnes that he would be placed in a holding cell for a while and then would be sent back to "Baltimore 20A." *Id.*[5]

Instead of sending Mr. Barnes back to a Baltimore 20A, Officer Merrill transported him to Jessup Correctional Institution ("JCI") for two hours (between 1:00 a.m. and 3:00 a.m.) and then Mr. Barnes was sent back to CMCF. At 8:00 a.m., Mr. Barnes was transported again to JCI and returned to CMCF, this time by Officer Hartlove. Upon returning to CMCF the second time, Mr. Barnes was taken to Patuxent Institution where he was placed on suicide watch. *Id.* at 3.

In his ARP, Mr. Barnes denies saying that he was suicidal and wanted to know why he was sent to Patuxent Institution ("Patuxent"), who had said he was suicidal, and why he was not in a

---

[4] *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007) ("It is well settled that district courts may convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. . . .")

[5] The record does not explain this reference.

"Baltimore dorm as a MCE laundry worker." *Id.*[6]  Mr. Barnes was housed at Patuxent from October 7, 2019 to October 16, 2019.  ECF 19-4 at 4.

Aside from naming Lt. El-Bey as a Defendant, Mr. Barnes's make no other reference to her in the Complaint or his ARP.  The Court notes that Lt. El-Bey signed Mr. Barnes's ARP in her role as Institutional ARP coordinator.  ECF No. 1-2 at 3.

Mr. Barnes seeks monetary relief of an unspecified amount and an investigation into his ARP request.  ECF No. 1 at 3.

## STANDARD OF REVIEW

A motion for summary judgment is granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *Celotex*, 477 U.S. at 322-23.  On those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In *Anderson*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  477 U.S. at 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return

---

[6] Maryland Correctional Enterprises (MCE) trains and employs inmates in a variety of services and product production, including laundry services.  *See* https://www.mce.md.gov (visited November 19, 2020).

a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252. In this inquiry, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013); *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). When the moving party expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

## DISCUSSION

Defendants argue that they are entitled to summary judgment as a matter of law because Mr. Barnes's allegations fail to establish a constitutional claim. In support, Defendants have filed verified copies of Mr. Barnes's medical, mental health, and ARP records.

<u>Medical and Mental Health Records</u>

Mr. Barnes's records show that when he was seen in the CMCF medical unit on October 6, 2019, he stated:

> I have spiritual episode came up that I could not control. Some power controlled it and I could not control myself. My head, my whole body moves like a snake – like a possession. Ever since I was 10 years old this episode – something spiritual is going on. The pastor said I have to stop changing my voice – sometime[s] I have a deep evil type of voice. . . . I have (sic) really demon possessed. . . . I saw Dr. Iden before and he said I need to see psychiatric provider.

ECF No. 24 at 2. The medical records indicate that Dr. Young, the on-call psychiatrist, ordered that Mr. Barnes be medically cleared in Jessup for admission to the mental health unit at Patuxent Institution. *Id.* Mr. Barnes was sent to JCI, but medical providers could not be reached to provide

4

the necessary clearance, and Mr. Barnes was returned to CMCF. *Id*. at 3. Mr. Barnes was sent to JCI a second time later that morning. Mr. Barnes reported no medical complaints, his vital signs were stable, and he was cleared for admission to Patuxent. *Id*. at 4. It was reported that Mr. Barnes was "agitated at having to wait for clearance." *Id.*

During Mr. Barnes's initial medical evaluation at Patuxent, the medical provider noted his history of paranoid schizophrenia, and that he was having disorganized thoughts, was hyper verbal, was preoccupied that spirits were controlling his body and was concerned he was not working at his job in the prison laundry. *Id*. at 6, 11. The record also noted that Mr. Barnes was agitated and upset that he was moved to Patuxent. *Id*. Mr. Barnes was placed on suicide precautions which were gradually lifted between October 7 and October 14, 2019. *Id.* at 7-10. He was closely observed and provided a safety smock. *Id*. at 10. He was diagnosed with schizophrenia paranoid type. *Id*. at 11.

### ARP Request

In ARP No. CMCF 0368-19, Mr. Barnes denied stating he was suicidal and wanted to know why he was placed on suicide precautions at Patuxent. ECF No. 1-2 at 2. Lieutenant El-Bey, who at the time held the rank of sergeant and was the Institutional ARP Coordinator, signed the ARP as received on October 21, 2019. *Id.*

The ARP was investigated and recommended for dismissal on November 6, 2019. ECF No. 19-4 at 8. The investigation revealed that Mr. Barnes presented at the CMCF medical unit with a euthymic mood stating that "spirits [were] controlling [his] body." *Id*. Dr. Young ordered that Mr. Barnes be medically cleared and admitted to the mental health unit for his safety and the safety of others around him. Mr. Barnes remained in the mental health unit at Patuxent until he

was stabilized and discharged. Further, Mr. Barnes could not be assigned to his previous prison job by custody staff until he received clearance from a mental health provider. *Id.*

Mr. Barnes appealed the ARP response to the Commissioner of Corrections on December 13, 2019 and claimed that he had received no response from the Warden at CMCF. ECF No. 19-3 at 4; ECF 19-4 at 4 (Warden's ARP dismissal dated January 9, 2020). The appeal was dismissed under COMAR 12.02.28.11.A(1)(b) because additional information was needed for investigation. ECF No. 19-3. Mr. Barnes resubmitted his appeal on December 27, 2019 and it was procedurally dismissed pursuant to COMAR 12.02.28.04.B(1) (providing inmates may not seek relief through ARP for case management recommendations and decisions.) *Id.* at 6.

On January 15, 2020, Mr. Barnes filed a grievance with the Inmate Grievance Office ("IGO"), which was administratively dismissed as moot pursuant to Md. Code Ann. Corr. Serv. § 10-207(b)(1). ECF No. 19-4.[7] IGO Deputy Director Woolford's dismissal stated that there was no longer an existing controversy or effective remedy available because Mr. Barnes was transferred from Patuxent on October 16, 2019. *Id.* Deputy Director Woolford added that case management is discretionary; classification and assignments can be modified at any time for any reason. *Id.*

Analysis

Eighth Amendment

In assessing Mr. Barnes's complaint, it is far from clear precisely which type of Eighth Amendment claim he pleads. Among the possibilities is a claim for denial of medical care. To establish an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious

---

[7] The date of the IGO decision does not appear on the copy provided to the court.

medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Courts treat an inmate's mental health claims just as seriously as any physical health claims." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citing *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977)). There is no distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *Bowring*, 551 F.2d at 47.

Mr. Barnes alleges that Lt. Anderson told him that he would be placed in a holding cell and then returned to his cell at CMCF. Instead, Officers Merrill and Hartlove transported Mr. Barnes from CMCF to JCI and back. Lt. El-Bey signed the ARP receipt. Viewing these allegations in the light most favorable to Mr. Barnes, none suggests Defendants interfered with Mr. Barnes's health care or otherwise acted with deliberate indifference to his serious medical or mental health needs. Even if the Court were to infer that Mr. Barnes is alleging that Lt. Anderson lied about Mr. Barnes's return to Baltimore, Mr. Barnes does not allege, nor does the record suggest, Lt. Anderson's actions amounted to deliberate indifference to establish an Eighth Amendment claim.

Alternatively, Mr. Barnes's claim may also be assessed under the rubric of *Farmer v. Brennan*, which allows prisoners to bring Eighth Amendment claims for a more generic type of deliberate indifference by prison officials. *Farmer v. Brennan*, 511 U.S. 825 (1994). Claims under *Farmer* derive from *Estelle* in that a prisoner must establish, first, a sufficiently serious deprivation that results in the denial of the minimal civilized measure of life's necessities, and second, a sufficiently culpable state of mind on the part of the prison official(s). *Id.* at 834 (citation omitted). Even under this broader test, there is no evidence in the record that Mr. Barnes was deprived of life's necessities. While being transferred among facilities in the middle of the night, apparently without explanation, may have been disconcerting for Mr. Barnes, it does not rise to the level of a serious deprivation; instead, prison officials were simply attempting to secure Mr. Barnes's

transfer to Patuxent's mental health unit after he was observed behaving in a manner that correctional officials reasonably concluded suggested that he was having a psychotic episode. But even assuming, for the sake of argument, that Mr. Barnes suffered a sufficiently serious deprivation under *Farmer*, there is no factual basis upon which a factfinder might infer that prison officials responded to Mr. Barnes's mental health crisis with the requisite state of mind to find for Mr. Barnes on a *Farmer* claim.

Absent a genuine issue as to any material fact to support a claim of deliberate indifference, Defendants are entitled to summary judgment as a matter of law on this claim.

<u>Fourteenth Amendment</u>

<u>Due Process</u>

The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of . . . liberty . . . without due process of law." To bring a due process claim, a plaintiff must first show the existence of a protected property or liberty interest. *Mathews v Eldridge*, 424 U.S. 319, 332 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Of relevance here, inmates generally have no liberty interest in holding a prison job or transferring to a particular correctional facility. There is no constitutional right for an inmate to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that protected liberty interests are generally limited to freedom from restraint that imposes atypical and significant hardship on inmate in relation to ordinary incidents of prison life); *McKune v. Lile*, 536 U.S. 24, 26 (2002) (stating that the "decision where to house inmates is at the core of prison administrators' expertise"); *Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978) ("[T]he classifications and work assignments of prisoners . . . are matters of prison administration, within the discretion of the prison administrators. . . ." ). Mr.

Barnes's transfer from CMCF and his subsequent assignment to the mental health unit at Patuxent does not trigger due process protections and therefore is not a viable basis for a Fourteenth Amendment claim.

To the extent Mr. Barnes claims his ARP was improperly processed and dismissed, "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) (discussing *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994) ); *see Robinson v. Wexford*, No. ELH-17-1467, 2017 WL 4838785, at *3 (D. Md. Oct. 26, 2017) ("[E]ven assuming, arguendo, that defendants . . . did not satisfactorily investigate or respond to plaintiff's administrative grievances, no underlying constitutional claim has been stated" because "'inmates have no constitutional entitlement or due process interest in access to a grievance procedure.'") (quoting *Booker*).  If Mr. Barnes intention is to assert Defendants violated state policies, procedures, rules, regulations, or state law, the mere violation of State law or regulation does not provide a basis for a due process violation. *See, e.g. Baker v. McCollan*, 443 U.S. 137, 146 (1979); *Riccio v. Cnty. of Fairfax, Va.,* 907 F.2d 1459, 1469 (4th Cir. 1990) ("[i]f the state law grants more procedural rights than the Constitution would otherwise require, a State's failure to abide that law is not a federal due process issue").  Mr. Barnes does not identify any misconduct by Defendants in processing his ARP.  In fact, he makes no specific allegations against Defendants at all in regard to his ARP.  Mr. Barnes does not allege that Lt. El-Bey, the ARP coordinator, refused to accept his ARP, thwarted or delayed its investigation, or caused him to suffer injury.  Accordingly, any due process claim Mr. Barnes seeks to raise in connection with the processing of his ARP is without merit.

<u>Equal Protection</u>

9

To the extent Mr. Barnes intends to assert an equal protection claim for the first time in his opposition (ECF No. 41 at 3), he may not do so.  Briefs in opposition to a dispositive motion may not be used to amend a complaint or add new claims.  *See Mylan Labs., Inc. v. Akzo, N.V.,* 770 F. Supp. 1053, 1068 (D. Md. 1991) (stating that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss" (citation omitted)); *see also Zachair Ltd. v Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint" (citations omitted)), aff'd 141 F.3d 1162 (4th. Cir. 1998).  Further, even if this claim were presented in the complaint, it would be unavailing.

A party claiming a violation of equal protection must "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 653 (4th Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439-40 (1985)). Mr. Barnes alleges no facts, nor does he establish that, due to unlawful discriminatory animus, similarly situated inmates are treated more favorably than he in the processing of ARP requests. Thus, in addition to being improperly raised in his opposition response, Mr. Barnes's equal protection claim is not viable.

## CONCLUSION

For the foregoing reasons, Defendants' dispositive motion, construed as a Motion for Summary Judgment, IS GRANTED.  A separate Order follows

December 15, 2020  
Date

\_\_\_\_/s/_____  
Paul W. Grimm  
United States District Judge